UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GEORGE HOGARTH,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>ERNESTO M. SANTACRUZ, JR., Acting Field Office Director of the Los Angeles Immigration and Customs Enforcement Office; TODD LYONS; KRISTI L. NOEM, Secretary of the United States Department of Homeland Security; PAMELA J. BONDI, Attorney General of the United States, acting in their official capacities,<br><br>　　　　　　Respondents. | Case No. 5:25-cv-09472-SPG-MAR<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 2]** |

　　　Before the Court is the Ex Parte Application for Temporary Restraining Order (ECF No. 2 ("Application" or "App.")) filed by Petitioner Robert George Hogarth ("Petitioner"). The Court finds the matter suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the Application, Respondents' Opposition (ECF No. 10 ("Opp.")), the Reply (ECF No. 12 ("Reply")), the relevant law, and the record in this case, the Court GRANTS the Application.

## I. BACKGROUND

This present action stems from Petitioner's unlawful prolonged detention claim, wherein he was detained by the Department of Homeland Security ("DHS") for nearly three years before filing a petition for writ of habeas corpus and being released on bond. *See* (App.). The bond decision authorizing Petitioner's release was recently vacated, leading to this Application and concurrently filed petition for a writ of habeas corpus. *See* (*id.*); (ECF No. 1 ("Petition" or "Pet.")). Petitioner requests the Court enjoin Respondents Ernesto Santacruz, Jr., Acting Field Office Director of the Los Angeles Immigration and Customs Enforcement Office, Todd Lyons, Acting Director of United States Immigration and Customs Enforcement, Kristi Noem, Secretary of the United States Department of Homeland Security, and Pamela Bondi, Attorney General of the United States acting in their official capacities, (collectively, "Respondents"), from detaining him without a custody hearing. (App.); (Pet. at 29).

### A. Factual Background

The following facts are based on declarations submitted by Petitioner in support of the Application.

Petitioner is fifty-five years old and was born in Kingston, Jamaica. (ECF No. 2-4 ("Petitioner Decl.") ¶ 2); (Mot. at 8). He is openly gay/bisexual, and alleges, in Jamaica, he experienced sexual and physical abuse on multiple occasions due to his sexuality. (Petitioner Decl. ¶ 3). However, he did not report this abuse to the police because he feared additional homophobic abuse from the police. (*Id.*).

#### 1. Petitioner's Ties to the United States

In April of 1989, he immigrated to the United States and has lived in the Los Angeles area as a lawful permanent resident. (*Id.* ¶¶ 4, 7).

Petitioner is married to a United States citizen and has six children, all of whom are also United States citizens. (*Id.* ¶ 6). Petitioner supports his family financially and works part-time as a contractor for construction, home-repair, and demolition jobs. (*Id.* ¶ 7).

Petitioner is also an emotional support and healthcare advocate for his wife, brother, sister, and children in the United States. *See* (*id.* ¶¶ 9, 10–30). His wife was involved in a car accident in 2021, and, since then, has required 24-hour care that he financially supports. (*Id.* ¶¶ 15, 16, 20). Petitioner's brother had a stroke in 2014 and requires 24-hour care. (*Id.* ¶¶ 10–11). Petitioner assists with and helps coordinate his brother's care and considers himself to be his brother's "primary healthcare advocate." (*Id.* ¶¶ 10–11, 14). Petitioner's sister was recently diagnosed with ovarian cancer. (*Id.* ¶¶ 25–26). Petitioner cares for her and drives her to chemotherapy appointments. (*Id.*). Petitioner also visits his children regularly. (*Id.* ¶¶ 23, 28–29).

### 2. Petitioner's Prior Offense and Rehabilitation

In 2014, Petitioner pled guilty to second-degree robbery for stealing a backpack that, Petitioner asserts he did not know contained a firearm. (*Id.* ¶ 31). Petitioner was sentenced to prison, was released from prison on September 10, 2020, and was immediately taken into custody by Immigration and Customs Enforcement and detained at the Adelanto Detention Center. (*Id.* ¶¶ 31–32). Petitioner was released on bond from the Adelanto Detention Center on April 7, 2023. (*Id.*); *see* (ECF No. 2-2, Ex. A ("Hogarth Bond Order")). The Bond Order required a payment in the amount of $25,000, as well as the following seven conditions:

1) Respondent shall attend and complete the 30-day Los Angeles Mission Rehabilitation program;
2) Respondent shall attend Alcoholics Anonymous (AA) or another related sobriety program;
3) Respondent shall be subject to electronic monitoring with frequent check-ins, including random drug testing, from the Department;
4) Respondent shall be subject to a zero-tolerance policy regarding the use or possession of alcohol, illicit drugs, or the misuse of prescription drugs, and any involvement to the contrary shall be grounds upon which the Department may seek revocation of the bond issued;

    5)    Respondent shall obtain and maintain gainful employment;

    6)    Respondent shall have no negative contact with law enforcement; and

    7)    Respondent shall appear for all immigration hearings, and if ordered removed from the United States, Respondent shall appear for removal as ordered.

(Hogarth Bond Order at 4).

According to his Declaration, Petitioner has complied with all conditions of his bond release. (Petitioner Decl. ¶ 35). He has abstained from alcohol and illicit drugs since his release, completed a 30-day residential rehabilitation program at the Los Angeles Mission, and regularly attends Alcoholics Anonymous meetings. (*Id.*). He has also maintained continuous employment, wears an electronic monitoring device, and submits to random drug testing administered by DHS. (*Id.*). Additionally, Petitioner checks in with ICE two to four times every month, either virtually, at ICE offices, or at his home. (*Id.* ¶ 36).

### B. Procedural History

On September 10, 2020, the Department of Homeland Security arrested Petitioner after his release from the California Department of Corrections and Rehabilitation. (ECF No. 2-1 ("Joyce Decl.") ¶ 5). Upon his arrest, DHS placed Petitioner in civil immigration detention at the ICE Processing Center in Adelanto, California. (*Id.*); (Petitioner Decl. ¶ 32).

#### 1. Petitioner's Removal Proceedings

On September 15, 2020, DHS filed a Notice to Appear in the Immigration Court in Adelanto, California, initiating removal proceedings against Petitioner. (Joyce Decl. ¶ 6). Petitioner was charged with being removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony after admission to the United States. (*Id.* ¶ 7).

On September 7, 2020, Petitioner filed an I-589 Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture ("CAT"), asserting that he feared he would be tortured as a bisexual man upon return to Jamaica. (*Id.* ¶ 8). On December 8, an Immigration Judge ("IJ") found Petitioner removable as

charged and designated Jamaica as the country of removal. (*Id.* ¶ 9). On March 4, 2021, the IJ denied Petitioner's CAT application, finding that, although Petitioner was eligible for Deferral of Removal under CAT, he did not satisfy his burden regarding the likelihood of future torture, or that the Jamaican government would acquiesce to any torture he may experience. (*Id.* ¶ 10). Petitioner timely filed a Notice of Appeal of the IJ's decision with the Bureau of Immigration Affairs ("BIA") on April 2, 2021. (*Id.* ¶ 11). On August 9, 2021, the BIA affirmed the IJ's decision and dismissed Petitioner's appeal. (*Id.* ¶ 12).

On August 24, 2021, Petitioner timely filed petition for review with the Ninth Circuit and a motion for stay of removal; the Ninth Circuit granted the motion for stay that same day. (*Id.* ¶ 13). On December 19, 2022, the Ninth Circuit remanded the case to the BIA. (*Id.* ¶ 16). On January 24, 2025, on remand from the Ninth Circuit, the BIA denied Petitioner's CAT application and again ordered his removal. (*Id.* ¶ 22). Petitioner again timely appealed and filed a petition for review with the Ninth Circuit on February 22, 2025. On March 10, 2025, Petitioner filed a motion to stay removal, which the Ninth Circuit granted on June 18, 2025. (*Id.* ¶¶ 24, 25). On July 31, 2025, Petitioner filed his opening brief for his petition for review. (*Id.* ¶ 26). The government's answering brief is due on November 17, 2025. (*Id.*).

    2. <u>Petitioner's Habeas Proceedings</u>

While his removal proceedings were pending, on October 13, 2022, Petitioner filed a Complaint and Petition for a Writ of Habeas Corpus in the Central District of California. (*Id.* ¶ 17); *see Hogarth v. Giles*, No. 5:22-cv-01809-DSF-MAR (C.D. Cal. Jan. 11, 2023). He argued that he was unlawfully detained for a prolonged period under 8 U.S.C. § 1226(c) without a bond hearing in violation of the Fifth Amendment's Due Process Clause. (Joyce Decl. ¶ 18).

On January 11, 2023, a United States Magistrate Judge issued a report and recommendation finding that Petitioner's two-year detention without a bond hearing was unreasonable and violated the Fifth Amendment, which the District Court adopted on

February 23, 2023. (*Id.* ¶¶ 18, 19). The District Court issued a judgment mandating that the IJ hold a bond hearing. (*Id.* ¶ 19).

Pursuant to the District Court's order, on April 5, 2023, the IJ held a bond hearing and ordered Petitioner released on a $25,000 bond. (*Id.* ¶ 20); *see* (Hogarth Bond Order). On July 14, 2023, DHS appealed the bond decision. (*Id.* ¶ 21). On September 16, 2025, the BIA vacated the IJ's bond decision, finding that its jurisdiction over Petitioner's bond proceedings derived from the IJ's regulatory authority to set conditions of detention, and that the IJ's authority to set conditions of detention expired when the BIA entered a final administrative order of removal on January 24, 2025. (*Id.* ¶ 27); *see* (ECF No. 2-3, Ex. B).

### 3. Petitioner's Present Petition and Application for a TRO

Petitioner commenced this instant action on October 3, 2025 against Respondents upon filing of a Petition for Writ of Habeas Corpus, *see* (Pet.), and this Application, *see* (App). Petitioner requested the Court grant the Application without providing notice to Respondents under Rule 65(b). (App.); *see* Fed. R. Civ. P. 65(b). On October 6, 2025, upon review of the Application, the Court set a hearing on the Application for October 8, 2025, and ordered Respondents to file a response by October 7, 2025, at 12:00 p.m. (ECF No. 9).[1] Respondents filed a response on October 7, 2025. (Opp.). Petitioner filed a Reply on October 7. (Reply). Upon review of the parties' filings, the Court determined that the matter was suitable for resolution without a hearing. (ECF No. 11).

---

[1] Pursuant to the Agreement on Acceptance of Service between the Clerk of Court and the United States Attorneys Office, the Order for Response constitutes service under Fed. R. Civ. P. 4. *See* C.D. Cal. L.R. 4-4 ("In all cases where a petitioner has filed a habeas corpus petition under 28 U.S.C. § 2241 or a motion under 28 U.S.C. § 2255, which challenges the judgment of a federal court or a decision of a federal agency, the procedures for service of the petitions, motions, and related orders will be pursuant to the agreement between the United States Attorneys' Office and the Court set forth in Appendix C to these Local Rules."); *see also Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, ECF No. 4 (C.D. Cal. July 8, 2025) (ordering government respondents to respond to a habeas petition by a noncitizen petitioner, constituting Fed. R. Civ. P. 4 service pursuant to the Agreement on Acceptance of Service between the Clerk of Court and the United States Attorneys Office).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs requests for TROs. Under Rule 65, a temporary restraining order may be issued without notice to the adverse party only if "immediate and irreparable injury, loss, or damage will result to the applicant" if the order does not issue. Fed. R. Civ. P. 65(b). The "stringent restrictions" imposed by "Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438–39 (1974). Thus, ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

In deciding an application for a temporary restraining order, the court is permitted to consider the parties' pleadings; declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

### III.    DISCUSSION

Petitioner raises two claims for relief in his Application. He first argues that the BIA's September 16, 2025, decision to vacate the IJ's April 5, 2023, bond order is contrary to law under the Administrative Procedure Act ("APA"). (App. at 13). Second, Petitioner argues that his re-detention by ICE without a hearing before a neutral adjudicator violates the Due Process Clause of the Fifth Amendment. (App. at 16). Respondents only argue that the Application is procedurally improper because Petitioner's counsel did not provide notice of or make efforts to meet and confer regarding the Application. (Opp. at 2). Respondents have provided no response as to *Winter* factors or merits of Petitioner's claims.

####    A.    Rule 65(b)(1): TRO Without Notice

The Court first finds that Petitioner has not met the requirements for issuing a temporary restraining order without notice to the government, as set forth in Rule 65(b)(1).

Rule 65(b)(1) permits a court to issue a temporary restraining order without notice to the adverse party if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Petitioner has put forth specific facts showing that because the BIA vacated the IJ's April 5, 2023, bond order, he will be detained at the ICE home visit scheduled for October 9, 2025. (Plaintiff Decl. ¶ 36); (Joyce Decl. ¶ 27); *see* (App. at 23–24). Plaintiff's attorney also states in a declaration that "providing advance notice to the government . . . will likely prompt the very harm that [Petitioner] seeks to avoid." (Joyce Decl. ¶ 27). Although Petitioner has shown he may suffer irreparable injury if his Application is heard according to regularly noticed and briefing procedures, he has not shown the setting an expedited briefing schedule for the Application in advance of the impending October 9, 2025, date with notice to the government will result in his immediate injury before October 9, 2025. *Cf. Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2578207, at *2 (N.D. Cal. Sept. 5, 2025) (granting TRO without notice in part because a petitioner in ICE custody satisfied the Rule 65(b) requirements); *Giorges v. Kaiser*, No. 25-cv-07683, 2025 WL 2615063, at *2 (N.D. Cal. Sept. 9, 2025) (same).

However, Respondents' citation to *Mission Power* does not warrant denial of the Application for lack of notice. (Opp. at 10 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)). Under *Mission Power*, parties seeking ex parte relief must show that they are "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect," and that they "will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures." *Id.* at 492–93. As described below, the Court finds that Petitioner has shown that he is entitled to ex parte relief. *See Vasquez Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP, 2025 WL 1915964, at *9–*10 (C.D. Cal. July 11, 2025) (granting ex parte relief for noncitizen plaintiffs fearing detention and deportation). In short, the BIA

vacated the IJ's bond decision on September 16, 2025. (Joyce Decl. ¶ 27). Petitioner is thus "without fault" in creating the circumstances giving rise to the Petition and Application. *See Mission Power*, 883 F. Supp. at 492–93. Based on his declaration, Petitioner has also asserted that he would suffer irreparable injury absent expedited relief. *See* (Petitioner Decl. ¶¶ 10–30); *Mission Power*, 883 F. Supp. at 492–93.

### B. *Winter* Factors

The Court finds that the *Winter* factors weigh in favor of Petitioner regarding his Due Process Claim and GRANTS the Application on this ground.[2]

#### 1. Likelihood of Success on the Merits

The Court finds that Petitioner is likely to succeed on the merits of his Fifth Amendment claim, in which he argues that the Due Process Clause requires a pre-deprivation hearing before his re-detention. (App. at 16). The test articulated in *Mathews v. Eldridge* governs the sufficiency of procedures attendant to deportation proceedings, and balances (1) "the private interest affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, Petitioner has a protected liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 553 U.S. 678, 690 (2001). Under this principle, "individuals released from immigration custody on bond have a protectable liberty interest in remaining out of

---

[2] The Court declines to address Petitioner's APA claim at this juncture. *E.g. Student Doe # 1 v. Noem*, No. 5:25-cv-00847-SSS-SHK, 2025 WL 1421371, at *2 n.2 (C.D. Cal. Apr. 25, 2025) ("Because the Court grants a TRO on the basis of Plaintiff's APA claim, the Court does not address Plaintiff's constitutional claim at this time.").

custody on bond." *Pinchi v. Noem*, No. 5:25-cv-05632-RMI-RFL, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025) (collecting cases). Courts in this Circuit have uniformly held that noncitizens released on parole have a liberty interest in remaining out of custody on bond, and are entitled to a deprivation hearing before the revocation of bond. *E.g. Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, *8–*9 (D. Or. Aug. 21, 2025); *Rosado v. Figueroa*, No. 25-cv-02157-PHX-DLR-CDB, 2025 WL 2337099, at *12–*13 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. 25-cv-2157-PHX-DLR-CDB, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). For example, the court in *Rosado v. Figueroa* found that a noncitizen who had been released on bond for six years was entitled to the procedural protections of the Fifth Amendment before re-detention. *Rosado*, 2025 WL 2337099, at *12–*13. Among these protections include prior notice to the detained party and a meaningful opportunity to object or a showing of changed circumstances by the government. *Id.*

Petitioner's allegations mirror those addressed in *Rosado*. *See* 2025 WL 2337099, at *3. He was released pursuant to a bond order in June of 2023, and there is no indication that he has violated his bond conditions or immigration requirements. *See* (Petitioner Decl. ¶¶ 35, 36). Petitioner's release required reporting to ICE, electronic monitoring, and random drug testing, with which, according to Petitioner, he has complied. (*Id.*); (App. at 17). Petitioner also has had no negative contact with law enforcement since his bond release. (Petitioner Decl. ¶ 35). And, Petitioner has completed a residential rehabilitation program, abstained from alcohol and illicit drugs since release, and regularly attends Alcoholics Anonymous meetings. (*Id.*). He has thus complied with the conditions of his bond release and has a protected liberty interest in that release. *See Giorges*, 2025 WL 2615063, at *3 (granting TRO enjoining the government from re-detaining noncitizens released on bond).

That Petitioner is not currently detained does not impact the analysis. "Habeas corpus relief is not limited to immediate release from illegal custody . . . the writ is available

as well to attack future confinement and obtain future releases." *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). Though Petitioner not detained, he may seek habeas relief.

Petitioner has also established a risk of erroneous re-detention, which a pre-deprivation hearing would guard against. An IJ has previously determined that Petitioner was not a flight risk and not a danger to the public. (Mot. at 22); (Joyce Decl. ¶ 20). In addition, Petitioner has sufficient shown there is a risk that ICE will re-arrest and re-incarcerate Petitioner at the check-in scheduled for October 9, 2025. (App. at 22–23) (citing *Qian Sun v. Ernesto Santacruz Jr et al. Additional Party Names: Kristi Noem, Pam Bondi, Todd M. Lyons, U.S. Dep't of Homeland Sec.*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) ("The risk of erroneous deprivation of this interest is high, as ICE takes the position that it may revoke a release determination at any time without either a hearing before or additional oversight from a neutral adjudicator.")).

And, the government's interest in re-detaining Petitioner without a hearing is low, particularly as Petitioner has complied with all terms of his bond release and has checked in with ICE two to four times a month since his release. (Petitioner Decl. ¶¶ 35, 36); *see Valencia Zapata*, 2025 WL 2578207, at *3 ("[T]he Court concludes that the government's interest in re-detaining Petitioners without a hearing is low, particularly in light of the fact that Petitioners have maintained lawful presence.").

Upon balancing the *Mathews v. Eldridge* factors, Petitioner is likely to succeed on the merits of his Fifth Amendment claim.

2. Irreparable Harm

Petitioner has shown that absent injunctive relief, he will suffer irreparable injury if he is arrested again and detained without a hearing. "The deprivation of constitutional rights unquestionably constitutes irreparable injury," including those "imposed on anyone subject to immigration detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (citing *Melendres v. Arpaio*, 694 F.3d 990, 1002 (9th Cir. 2012)). Not only would Petitioner be deprived of due process under the Fifth Amendment absent injunctive relief, but the members of his family would also suffer from the loss of his income and emotional

support. *See* (Plaintiff's Decl. ¶¶ 9, 10–30); *see also Sun*, 2025 WL 2730235, at *7 (recognizing that re-detention of a noncitizen Petitioner would "prevent her from helping support her family financially and emotionally" and risk imposing "a significant hardship on [Petitioner] and her family.").

### 3. Balance of the Equities and Public Interest

The balance of equities and public interest merge when the Government is the party opposing the relief sought. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

Petitioner has shown that he is likely to succeed on the merits of his Fifth Amendment claim, wherein due process requires a pre-deprivation hearing before he may be detained. *See* (App. at 16). He has also demonstrated that he and his family will suffer significant hardship absent injunctive relief. (Petitioner Decl. ¶¶ 10–30). As recognized by other courts in this Circuit, in the context of immigration detention proceedings, the harm to Petitioner is "significant," while the potential harm to the government is "minimal." *See Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *4 (N.D. Cal. Aug. 1, 2025) ("The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight.").

On balance, the *Winter* factors weigh in Petitioner's favor and the Court GRANTS Petitioner's Application for a Temporary Restraining Order.

### C. Rule 65(c): Bond Requirement

The Court also exercises its discretion under Rule 65(c) to waive the filing of bond. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court "with discretion as to the amount of security required, if any."). Rule 65(c)

provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Respondents are unlikely to incur significant costs and requiring a bond "would have a negative impact on plaintiff's constitutional rights." *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 2025 WL 2640421, at *17 n.16 (C.D. Cal. Sept. 10, 2025) (quoting *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996)). Thus, no security is required. *E.g.*, *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 n.3 (C.D. Cal. Aug. 28, 2025) (dispensing of bond requirement in issuing a preliminary injunction order to release petitioner from immigration detention); *Aceros v. Kaiser*, No. 25-cv-06924-RMI-EKL, 2025 WL 2453968, at *3 (N.D. Cal. Aug. 16, 2025) (dispensing of bond requirement in granting a temporary restraining order).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's Application and hereby ORDERS as follows:

1. Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from detaining Petitioner pending further order of this Court.

//
//
//
//
//
//
//
//
//

2. Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue at an in-person hearing on Wednesday, October 15, 2025, at 9:00 a.m. in Courtroom 5C. Petitioner shall file an opening brief and related submissions no later than October 10, 2025, at 5:00 p.m. Respondents shall file an opposition no later than Tuesday, October 14, 2025, at 5:00 p.m. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED: October 9, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE