1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ROBERT GEORGE HOGARTH,                    Case No. 5:25-cv-09472-SPG-MAR

                          Petitioner,          **ORDER GRANTING MOTION FOR**
12
                                               **PRELIMINARY INJUNCTION**
13          v.                                 **[ECF NO. 14]**

14   ERNESTO M. SANTACRUZ, JR.,
     Acting Field Office Director of the Los
15   Angeles Immigration and Customs
     Enforcement Office; TODD LYONS;
16   KRISTI L. NOEM, Secretary of the United
     States Department of Homeland Security;
17   PAMELA J. BONDI, Attorney General of
     the United States, acting in their official
18   capacities,
19
                          Respondents.
20

21

22

23          Before the Court is the Motion for Preliminary Injunction (ECF No. 14 ("Motion"))

24   filed by Petitioner Robert George Hogarth ("Petitioner").  Having considered the parties'

25   submissions, oral arguments, the relevant law, and the record in this case, the Court

26   GRANTS the Motion.

27

28

# I.    BACKGROUND

On October 9, 2025, after briefing from the parties, the Court granted Petitioner's Ex Parte Application for Temporary Restraining Order.  (ECF No. 13 ("TRO Order")).  Petitioner now seeks to convert the TRO Order into a preliminary injunction enjoining Respondents Ernesto Santacruz, Jr., Acting Field Office Director of the Los Angeles Immigration and Customs Enforcement Office ("ICE"); Todd Lyons, Acting Director of United States Immigration and Customs Enforcement; Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States, acting in their official capacities (collectively, "Respondents"), from re-detaining him after his release on bond without first affording him a hearing before a neutral adjudicator.  (Mot. at 8).

## A.    Factual Background

The Court has previously recounted the factual and procedural history in this case in the TRO Order, which is incorporated here by reference.  (TRO Order).

The following facts are provided from Petitioner's Declaration and have not been contested by Respondents.  *See* (ECF No. 14-5 ("Hogarth Decl.").  In brief, Petitioner is a self-described openly gay/bisexual noncitizen.  (Hogarth Decl. ¶¶ 3, 4).  He was born in Jamaica and alleges that, there, he experienced sexual and physical abuse due to his sexuality. (Hogarth Decl. ¶ 3).  In April of 1989, Petitioner immigrated to the United States and has resided in the Los Angeles area for more than thirty years as a lawful permanent resident.  (Hogarth Decl. ¶ 4).  According to Petitioner, since his release from detention, he has worked to financially support his family and provides emotional support to various members of his family.  (Hogarth Decl. ¶¶ 7–30).  He is the primary caregiver for his wife, who requires "almost constant care," and serves as a medical advocate for her and his brother.  (Hogarth Decl.¶¶ 13–14, 19–21).  Petitioner also supports his children financially and emotionally.  (Hogarth Decl. ¶¶ 22–24, 27–30).

**B.    Procedural History**

The procedural history associated with this case, which includes criminal, administrative, civil, and appellate proceedings involving Petitioner, is extensive.[1]

To summarize, on February 24, 2014, Petitioner pled guilty to second-degree robbery under California Penal Code § 211 for stealing a backpack that held a firearm. *Hogarth v. Giles*, No. 5:22-cv-01809-DSF-MAR (C.D. Cal. Oct. 13, 2022), ECF No. 1, at 7 ("2022 Habeas Petition"); *see also* (ECF No. 14-3 ("IJ Bond Order") at 6). His plea carried a total sentence of nine years in prison: five years for the robbery, and four years for a firearm sentencing enhancement under California Penal Code § 12022.5(a). 2022 Habeas Petition ¶ 30. On September 10, 2020, Petitioner was released from the California Department of Corrections and Rehabilitation and arrested by DHS pursuant to 8 U.S.C. § 1226(c). (ECF No. 14-2 ("Joyce Decl.") ¶ 7). DHS placed Petitioner in civil immigration detention at the ICE Processing Center in Adelanto, California, where he was detained until his release on bond on April 5, 2023. (Joyce Decl. ¶¶ 7, 22).

1.    Petitioner's Removal Proceedings

On September 15, 2020, DHS initiated removal proceedings against Petitioner and filed a Notice to Appear in Immigration Court. (Joyce Decl. ¶¶ 8, 9). Petitioner was charged with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on him sustaining an aggravated felony conviction after his admission to the United States. (*Id.* ¶ 9).

On December 7, 2020, Petitioner filed an I-589 Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture ("CAT"), asserting that he feared he would be tortured because of his sexuality if he were to be removed to Jamaica. (Joyce Decl. ¶ 10). On December 8, 2020, an Immigration Judge

---

[1] The Court takes judicial notice of Petitioner's prior and ongoing litigation history. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that [a court] may take judicial notice of judicial proceedings in other courts."). These are: *Hogarth v. Bondi*, No. 25-1139 (9th Cir. filed Feb. 22, 2025) ("Pending Ninth Circuit Appeal"); *Hogarth v. Giles*, No. 5:22-cv-01809-DSF-MAR (C.D. Cal. filed Oct. 13, 2022) ("2022 Habeas Proceedings").

("IJ") found Petitioner removable as charged and designated Jamaica as the country of removal. (Joyce Decl. ¶ 11). On March 4, 2021, an IJ denied Petitioner's CAT application, finding that, although Petitioner was eligible for Deferral of Removal under CAT, he had not made a sufficient showing of the likelihood of future torture or that the Jamaican government would acquiesce to any torture he may experience. (Joyce Decl. ¶ 12). On March 29, 2021, the Adelanto Immigration Court conducted a bond hearing pursuant to an injunction in effect in the case of *Rodriguez v. Holder,* a separate class action,[2] and denied Petitioner bond. 2022 Habeas Proceedings, ECF No. 20, at 2 ("2022 R&R").

On April 2, 2021, Petitioner timely filed a Notice of Appeal of the IJ's decision with the Bureau of Immigration Affairs ("BIA"). (Joyce Decl. ¶ 13). On August 9, 2021, the BIA affirmed the IJ's decision and dismissed Petitioner's appeal. (*Id.* ¶ 14).

---

[2] Named plaintiffs in *Rodriguez v. Holder* represented a certified class of noncitizens who challenged their prolonged detention without individualized bond hearings under the Due Process Clause. *Rodriguez v. Robbins*, 804 F.3d 1060, 1065 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). On August 6, 2013, the district court entered a permanent injunction requiring the government to provide the certified class of individuals detained under 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) "with a bond hearing by [their] 195th day of detention" and that "the government bear the burden of proving by clear and convincing evidence that a detainee is a flight risk or a danger to the community to justify the denial of bond." *Id.* at 1071. On appeal, the Ninth Circuit partially affirmed the injunction and found that class members detained under 8 U.S.C. §§ 1225(b),1226(a), and 1226(c) were "entitled to bond hearings after they have been detained for six months," and every six months thereafter for the period of detention. *Id.* at 1078, 1089. The Supreme Court, however, reversed, holding that the text of 8 U.S.C. §§ 1225(b),1226(a), and 1226(c) could not "reasonably be read to limit detention to six months" such as to require a bond hearing, and remanded the issue back to the Ninth Circuit. *Jennings*, 583 U.S. at 300–01, 303–04.

On March 29, 2021, when Petitioner received his bond hearing, the injunction in *Rodriguez* was still in place. *See Rodriguez v. Barr*, No. 20-55770, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021) (vacating the August 6, 2013, permanent injunction); *see also* 2022 R&R at 5–7 (summarizing the procedural history of *Jennings* as relevant to Petitioner).

On August 24, 2021, Petitioner timely filed a petition for review with the Ninth Circuit and also moved for stay of removal; the Ninth Circuit granted the stay the same day. (*Id.* ¶ 15). On December 19, 2022, the Ninth Circuit remanded the case to the BIA. (Joyce Decl. ¶ 18). On January 24, 2025, on remand from the Ninth Circuit, the BIA denied Petitioner's CAT application, issued a final administrative decision, and again ordered his removal. (Joyce Decl. ¶ 24). (ECF No. 14-4 ("BIA Order Vacating Bond") at 4).

On February 22, 2025, Petitioner timely appealed the denial of his CAT application and filed a petition for review with the Ninth Circuit. (Joyce Decl. ¶ 25). On March 10, 2025, Petitioner filed a motion to stay removal. (Joyce Decl. ¶ 26). On June 18, 2025, the Ninth Circuit granted the stay pending resolution of Petitioner's appeal. (Joyce Decl. ¶ 27); *Hogarth v. Bondi*, No. 25-1139, dkt. 28 (9th Cir. June 18, 2025) ("Order Granting Stay"). Specifically, the Ninth Circuit ordered:

> The request (Docket Entry No. 25 [Opposition to Motion to Stay Removal filed by Respondent Pamela Bondi]) for an expedited ruling is granted.
>
> The supplemented motion (Docket Entry Nos. 12 [Motion to Stay Removal filed by Petitioner Robert George Hogarth], 22 [Supplemental Motion to Stay Removal filed by Petitioner Robert George Hogarth]) to stay removal is granted. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Leiva-Perez v. Holder*, 640 F.3d 962, 964-65 (9th Cir. 2011). The stay of removal remains in place until the mandate issues.

Order Granting Stay at 1.

On July 31, 2025, Petitioner filed his opening brief for his petition for review. (Joyce Decl. ¶ 28). The government's answering brief is due on November 17, 2025. (*Id.*).

### 2. Petitioner's Bond Proceedings

On October 13, 2022, during the pendency of his removal proceedings, Petitioner filed a Complaint and Petition for a Writ of Habeas Corpus in the Central District of California, arguing that he was unlawfully detained for a prolonged period under 8 U.S.C.

§ 1226(c) without a bond hearing, in violation of the Fifth Amendment's Due Process Clause. 2022 Habeas Petition; (Joyce Decl. ¶ 19).

On January 11, 2023, a United States Magistrate Judge issued a report and recommendation finding that Petitioner's two-year detention without a bond hearing was unreasonable and violated the Fifth Amendment. 2022 R&R; (Joyce Decl. ¶ 20).

On February 23, 2023, the Honorable Dale S. Fischer, United States District Judge, adopted the Report and Recommendation and issued a judgment mandating that the IJ hold a bond hearing, *see* 2022 Habeas Proceedings, ECF Nos. 24, 25 ("2023 District Court Order"). Pursuant to the 2023 District Court Order, on April 5, 2023, the IJ held a bond hearing, set the conditions of release, and ordered Petitioner to pay a $25,000 bond. (IJ Bond Order at 3–4). The IJ found that the Government did not meet its burden to establish that Petitioner's release "would pose a danger to the community and/or such a significant flight risk that it could not be adequately mitigated by the setting of an appropriate bond and the implementation of alternatives to detention." (*Id.* at 3). In addition to the payment of bond, the IJ Bond Order set the following conditions of release:

1) Respondent shall attend and complete the 30-day Los Angeles Mission Rehabilitation program;

2) Respondent shall attend Alcoholics Anonymous (AA) or another related sobriety program;

3) Respondent shall be subject to electronic monitoring with frequent check-ins, including random drug testing, from the Department;

4) Respondent shall be subject to a zero-tolerance policy regarding the use or possession of alcohol, illicit drugs, or the misuse of prescription drugs, and any involvement to the contrary shall be grounds upon which the Department may seek revocation of the bond issued;

5) Respondent shall obtain and maintain gainful employment;

6) Respondent shall have no negative contact with law enforcement; and

7)    Respondent shall appear for all immigration hearings, and if ordered
      removed from the United States, Respondent shall appear for removal
      as ordered.

(*Id.* at 4).

On July 14, 2023, DHS appealed from the IJ Bond Order.  (Joyce Decl. ¶ 23).  On September 16, 2025, the BIA vacated the IJ Bond Order, finding that the IJ's jurisdiction over Petitioner's bond proceedings derived from the IJ's regulatory authority to set conditions of detention, and that the IJ's authority to set conditions of detention expired when the BIA entered a final administrative order of removal on January 24, 2025.  (BIA Order Vacating Bond at 4); (Joyce Decl. ¶ 29).

### 3.    Petitioner's Present Habeas Petition

On October 3, 2025, Petitioner filed the present Petition for Writ of Habeas Corpus (ECF No. 1 ("Petition")) and an Ex Parte Application For Temporary Restraining Order (ECF No. 2 ("TRO Application").  The TRO Application raises two claims for relief: Petitioner's anticipated re-detention without a hearing before a neutral arbiter would violate the Fifth Amendment, Due Process Clause; and the BIA's decision to vacate the IJ Bond Order is contrary to law under the Administrative Procedure Act ("APA").  (TRO Application at 13).  Petitioner requested that the Court issue a temporary restraining order enjoining Respondents from re-detaining him.  (TRO Application at 26).

Upon review of the TRO Application, the Court ordered Respondents to file a response.  (ECF No. 9).  On October 9, 2025, the Court granted the TRO Application and enjoined Respondents from detaining Petitioner pending further order from the Court.  (TRO Order at 14).  The Court also issued Respondents an Order to Show Cause why a preliminary injunction should not issue and set a briefing schedule for the motion for preliminary injunction.  (*Id.* at 15).

Petitioner filed this Motion on October 10, 2025, again seeking to enjoin Respondents from re-detaining him without first affording him a hearing to determine whether his re-detention is lawful.  (Mot.).  Respondents filed the response on October 14,

2025.  (ECF No. 15 ("Opp.")).  Petitioner also filed a Reply on October 14, 2025.  (ECF
No. 16 ("Reply")).  Respondents filed an objection to the Reply, requesting the Court strike
the Reply.[3]  (ECF No. 17).  The Court heard arguments on the Motion on October 15, 2025.
(ECF No. 18).

## II.  LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded
upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res.
Def. Council*, 555 U.S. 7, 22 (2008).  The moving party must establish that: (1) he is likely
to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of
preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in
the public interest.  *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *id.* at 20).
"The first *Winter* factor, likelihood of success on the merits, "is the most important factor."
*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

Alternatively, under the Ninth Circuit's "serious questions standard," also known as
the "sliding scale variant" of the *Winter* standard, the moving party may obtain a
preliminary injunction by showing there are "serious questions going to the merits," that
"the balance of hardships [ ] tips sharply towards the plaintiff," "that there is a likelihood
of irreparable injury and that the injunction is in the public interest."  *Fraihat*, 16 F.4th at
635 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).
Under either standard, where the Government is the party opposing the relief sought, the
third and fourth *Winter* factors merge.  *Nken*, 556 U.S. at 435.  If a movant makes a
sufficient showing of the requisite factors, "a court must not shrink from its obligation to
enforce his constitutional rights, regardless of the constitutional right at issue."  *Baird v.*

---

[3] The Court declines to strike the Reply.  In deciding a motion for a preliminary injunction,
the Court is permitted to consider the parties' pleadings, declarations, affidavits, and
exhibits submitted in support of and in opposition to the motion.  *See Republic of the
Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988).

*Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (internal quotation marks omitted and cleaned up); *Brown v. Plata*, 563 U.S. 493, 511 (2011)).

## III.    DISCUSSION

Petitioner argues that a preliminary injunction should issue because he is likely to succeed on the merits for his claims that (1) the Due Process Clause of the Fifth Amendment prohibits Respondents from re-detaining him without a hearing before a neutral arbiter because Petitioner has a valid liberty interest in remaining released; and (2) the BIA's vacatur of IJ Bond Order is contrary to law under the APA. (Mot. at 15–17, 25). Further, he argues that he has demonstrated irreparable harm, as well as the other relevant factors for injunctive relief. (Mot. at 8).

In their Opposition to the Motion, Respondents do not address whether Petitioner has a protected liberty interest in remaining released from custody that requires a pre-deprivation hearing. Instead, pointing to the declaration of Officer John Park, a Deportation Officer employed by DHS, ICE, Enforcement and Removal Operations ("ERO") in its Los Angeles Field Office, *see* (ECF No. 15-1 ("Park Decl.")), Respondents represent that they agree "Petitioner should not be taken into immigration detention at this juncture, given the Ninth Circuit's current stay of his removal order pending his appeal," and that "ICE [ ] does not intend to arrest Petitioner" while his appeal is pending, unless he "in the future violate[s] his supervised release[] conditions." (Opp. at 3, 5).

In addressing the issues presented in the Petition for a TRO, the Court previously found that Petitioner had shown the *Winter* factors weighed in his favor on his claim based on the Fifth Amendment, Due Process Clause. Specifically, the Court found that Petitioner was likely to succeed on the merits of the claim, that he was likely to suffer irreparable harm without a pre-deprivation hearing, and that the balance of the equities and public interest weighed in his favor. *See* (TRO Order).

Similarly, for the reasons set forth below, the Court concludes that a preliminary injunction is warranted because Petitioner has established a likelihood of success on the merits or, at least, shown the presence of serious questions going to the merits on his

procedural due process claim that he is entitled to "a pre-deprivation hearing before a
neutral adjudicator at which the government meets its evidentiary burden" before Petitioner
can be re-detained under 8 U.S.C. § 1226(c).  *See* (Pet. at 26–27).  Further, Petitioner has
shown he is likely to suffer irreparable harm if the requested injunction order is not issued
and has shown the balance of hardships tips sharply in his favor.

The Court therefore grants the Motion on Petitioner's due process claim and declines
to address at this time Petitioner's remaining arguments under the APA for an injunction.
*See Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *5 (C.D. Cal.
Aug. 26, 2025) ("[A] showing of a likelihood of success on even just one claim is sufficient
for injunctive relief as long as that claim would support the injunctive relief sought.")
(internal quotation marks omitted and cleaned up).

## A.    Likelihood of Success

"It is well established that the Fifth Amendment entitles aliens to due process of law
in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v.
Flores*, 507 U.S. 292, 306 (1993)).  The Ninth Circuit has assumed without deciding, and
district courts have followed, that the *Mathews v. Eldridge* balancing test applies to due
process challenges in the immigration context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189,
1206–1207 (9th Cir. 2022); *e.g. Sun*, 2025 WL 2730235, at *5 (applying the *Mathews v.
Eldridge* test to a released noncitizen seeking to enjoin ICE from re-detaining her without
a pre-deprivation hearing); *Perera v. Jennings*, 598 F. Supp. 3d 736, 745–47 (N.D. Cal.
2022) (applying the *Mathews v. Eldridge* test to determine the level of process due to a
noncitizen subject to detention under 28 U.S.C. § 1226(c)); *Diep v. Wofford*, No. 1:24-cv-
01238-SKO-HC, 2025 WL 604744, at *4 (E.D. Cal. Feb. 25, 2025) (same).  Therefore to
evaluate sufficiency of procedures attendant to Petitioner's deportation proceedings, the
Court will balance: (1) "the private interest affected by the official action"; (2) "the risk of
erroneous deprivation of such interest through the procedures used"; and (3) "the
Government's interest, including the function involved and the fiscal and administrative

1   burdens that the additional or substitute procedural requirement would entail." *Rodriguez*
2   *Diaz*, 53 F.4th at 1206–07 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

3               1.    Private Interest Affected

4         The Court first addresses Petitioner's private interest—whether Petitioner has a
5   liberty interest in his conditional release.  As stated previously, Respondents do not address
6   in their Opposition whether Petitioner has such an interest and whether it requires a pre-
7   deprivation hearing.  Nevertheless, based on due process principles attendant to Petitioner's
8   conditional release and the 2023 District Court Order, the Court finds that Petitioner has a
9   valid liberty interest that is protectable by the Due Process Clause, notwithstanding
10  Petitioner's immigration status.

11              a)    *Statutory Basis for Petitioner's Detention*

12        "Freedom from imprisonment—from government custody, detention, or other forms
13  of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
14  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Still, "detention during deportation
15  proceedings [is] a constitutionally valid aspect of the deportation process," and courts have
16  long held that "the Government may constitutionally detain deportable aliens during the
17  limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 523, 526.

18        Section 236 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1226,
19  establishes the government's authority to detain a noncitizen. *Casas-Castrillon v. Dep't of*
20  *Homeland Sec.*, 535 F.3d 942, 945 (9th Cir. 2008), *overruled in part on other grounds by*
21  *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023).  Section 1226(c) mandates detention of
22  any noncitizen "who is deportable or admissible based on a qualifying, enumerated
23  offense." *Avilez*, 69 F.4th at 530 (citing 8 U.S.C. § 1226(c)).  Specifically, under
24  § 1226(c)(1)(B), "[t]he Attorney General shall take into custody any alien who [] is
25  deportable by reason of having committed any offense covered in [section
26  1227(a)(2)(A)(iii)]." 8 U.S.C. § 1226(c)(1)(B).  Unlike detention under § 1226(a), which
27  is at the discretion of the Attorney General, detention under § 1226(c) is "mandatory": the
28  Attorney General "*must* arrest those aliens guilty of a predicate offense," "regardless of

exactly when or even whether the alien was released from criminal custody."[4]  *Nielsen v. Preap*, 586 U.S. 392, 409, 418 (2019) (emphasis in original).  Under § 1226(c)(4), the Attorney General may only release noncitizens subject to mandatory detention only if the Attorney General determines release of the alien is necessary for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(4); *see also Jennings*, 583 U.S. at 289.

Noncitizens detained under § 1226(c) are "not statutorily entitled to a bond hearing."[5]  *Avilez*, 69 F.4th at 530.  Nor are noncitizens permitted to "challeng[e] a

---

[4] 8 U.S.C. § 1226(a) is the "default rule" governing the arrest and detention of noncitizens pending removal proceedings.  *Jennings*, 583 U.S. at 303.  Specifically, § 1226(a) provides, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a); *cf.* 8 U.S.C. § 1226(c) (requiring that "[t]he Attorney General *shall* take into custody any alien who is deportable or inadmissible based on a qualifying, enumerated offense.") (emphasis added).  The use of "may" and "shall" distinguish whether detention of a noncitizen is discretionary (§ 1226(a)) or mandatory (§ 1226(c)).  *See Avilez*, 69 F.4th at 529–30 (comparing the text of § 1226(a) and § 1226(c)).

[5] In *Demore*, the Supreme Court recognized that mandatory detention of individuals with certain qualifying criminal convictions § 1226(c) did not run afoul of the Fifth Amendment because of the statute's legislative history and because the period of mandatory detention was not indefinite.  *Demore*, 538 U.S. at 530.  The Court noted that Congress enacted § 1226(c) to "deal with increasing rates of criminal activity by aliens."  *Id.* at 518 (citing Criminal Aliens in the United States: Hearings before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104–48, p. 1 (1995)).  The goal of § 1226(c) was "to complete removal proceedings against all deportable criminal aliens before their release [from criminal imprisonment]."  *Avilez*, 69 F.4th at 540 (Berzon, J., concurring) (quoting *id.* at 530 n.13).  In upholding the constitutionality of § 1226(c), based on this legislative intent, the Court in *Demore* presumed that such mandatory detention was not "indefinite" or "potentially permanent," but instead "of a much shorter duration."  *Demore*, 538 U.S. at 528.  Detention under § 1226(c) has a "definite termination point: the conclusion of removal proceedings."  *Jennings*, 583 U.S. at 304 (citing *id.* at 529).  *Demore* characterizes detention under § 1226(c) as "narrow," and describes that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about

---

-12-

discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding [the noncitizen's] detention or release." *Jennings*, 583 U.S. at 295 (citing 8 U.S.C. § 1226(e)).[6]    A noncitizens may, however, bring an as-applied "constitutional challenge to [§ 1226(c)] authorizing his detention without bail" and seek habeas review. *Demore*, 538 U.S. at 517; *id.* at 295–96.

Upon receiving such requests for habeas review, district courts throughout the Ninth Circuit "have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on procedural due process principles. *Singh v. Garland*, No. 5:24-cv-01635-CAS, 2025 WL 1913368, at *2 (C.D. Cal. Apr. 21, 2025) (citing cases). This is because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. The conditional release from custody of a noncitizen, like any individual released conditionally, vests in them "liberty [that] is valuable and must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see Sun*, 2025 WL 2730235, at *5 (analogizing a noncitizen's release on bond to criminal parolees in *Morrissey*); *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, *3 (N.D. Cal. July 24, 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen

---

five months in the minority of cases in which the alien chooses to appeal." *Demore*, 538 U.S. at 526, 530. If removal proceedings against all deportable criminal noncitizens were completed before their release from criminal imprisonment, "§ 1226(c) and the temporary detention it mandates would be rendered obsolete." *Id.* at 529–30 n.13.

[6] 8 U.S.C. § 1226(e) "governs any review" of individuals that are "mandatorily detained under 8 U.S.C. § 1226(c)." *Martinez v. Clark*, 124 F.4th 775, 781 (9th Cir. 2024). 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." The Ninth Circuit has held that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion, but that discretionary judgment does not include constitutional claims or questions of law." *Martinez*, 124 F.4th at 781–82 (quoting *Singh v. Holder*, 638 F.2d 1196, 1202 (9th Cir. 2011)). In other words, federal courts maintain "traditional habeas jurisdiction." *Id.* at 781.

pending removal proceedings, after that individual is released from custody she has a
protected liberty interest in remaining out of custody.").  A noncitizen subject to supervised
release "rel[ies] on at least an implicit promise" that his release "will be revoked only if he
fails" to comply with the conditions of release.  *Morrissey*, 408 U.S. at 482; *see Pinchi*,
2025 WL 2084921, *3.

Here, based on the mandatory detention requirement of § 1226(c), it may at first
blush appear that Petitioner does not have a liberty interest in remaining on bond in this
case.  Indeed, Petitioner does not dispute 8 U.S.C. § 1226(c) mandates his detention.  (Pet.
at 26), given that the Notice to Appear charged Petitioner as deportable under section
1227(a)(2)(A)(i), Petitioner pled guilty to an aggravated felony, and he was sentenced to a
term of imprisonment of at least 1 year.  *See* (Joyce Decl. ¶ 9.)  However, the procedural
history of this case establishes that Petitioner still has a valid liberty interest in remaining
on bond such that he is likely to succeed on his due process claim that he cannot be re-
detained without first being afforded a hearing before a neutral arbiter .

> b)    *Petitioner's Civil Immigration Detention and First Habeas
> Petition*

It is undisputed that Petitioner was previously detained in civil immigration
proceedings pursuant to 8 U.S.C. § 1226(c) between September 10, 2020, to April 5, 2023,
and was released based on the court's finding in the 2023 District Court Order that his
prolonged detention without a bond hearing violated the Due Process Clause of the Fifth
Amendment.  (Mot. at 10–11); (IJ Bond Order at 3); 2022 Habeas Proceedings, ECF No.
24, at 2.

On September 10, 2020, DHS arrested Petitioner after his release from the California
Department of Corrections and Rehabilitation and placed him in civil immigration
detention at the ICE Processing Center in Adelanto, California.  (Joyce Decl. ¶ 7).  On
March 29, 2021, pursuant to an injunction in effect in *Rodriguez v. Holder*, the Adelanto
Immigration Court conducted a bond hearing for Petitioner and denied him bond.  *See* 2022
R&R at 2.  On October 13, 2022, eighteen months later after this first denial of bond,

Petitioner filed a petition for writ of habeas corpus, arguing that his "ongoing prolonged detention" of eighteen months without a hearing was a Fifth Amendment due process violation.  *See* 2022 Habeas Petition ¶¶ 91–95.

On January 11, 2023, a United States Magistrate Judge issued a report and recommendation finding that Petitioner's detention without a bond hearing was unreasonable and violated the Due Process Clause of the Fifth Amendment.  *See* 2022 R&R.  The Magistrate Judge analyzed Petitioner's claim under both the *Mathews v. Eldridge* test and a multi-factor "reasonableness" test derived from cases addressing detention under § 1226(c) before the Supreme Court's opinion in *Jennings*.  *Id.* at 12.  The Magistrate Judge first found that Petitioner was entitled to a bond hearing under *Mathews v. Eldridge*.  *Id.* at 13–18.  According to the Magistrate Judge, Petitioner had a private interest in a bond hearing, the burden on the government in providing such a hearing was low, and the risk of erroneous deprivation was high because § 1226(c) "provides no opportunity for any further bond determinations for the duration of Petitioner's detention."  *Id.* at 13–17.  The Magistrate Judge found:

> Since his first and only bond hearing over twenty-one (21) months ago, Petitioner has had no available process to challenge his continued detention before a neutral decisionmaker.  Going forward, there is no available process for Petitioner to have a neutral decisionmaker to reconsider his continued detention.  It cannot be that due process authorizes infinite detention without any opportunity for reconsideration.  Given that: (1) Petitioner has been held without a bond hearing for nearly two (2) years; (2) there is no opportunity for a bond redetermination in sight; (3) it is not clear when Petitioner's petition for review will be adjudicated; and (4) Petitioner has shown his circumstances have potentially materially changed in the last twenty-one (21) months, the risk of erroneous deprivation weighs in favor of another bond hearing.
>
> Ultimately, on balance, though both Petitioner and the government have significant interests at stake, Petitioner's private interest and the risk of

erroneous deprivation of that interest cause the Mathews factors to weigh in favor of ordering Respondents to provide Petitioner with a second bond hearing.

*Id.* at 17–18.

Second, the Magistrate Judge found that Petitioner was entitled to a bond hearing under the reasonableness test when evaluating the following six factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 18. According to the Magistrate Judge, three factors weighed in Petitioner's favor: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the conditions of detention. The other three factors were neutral: (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 19–23. Therefore, the Magistrate Judge found that "Petitioner's nearly-two-year detention without a bond hearing has become unreasonable and violates due process." *Id.* at 23.

Finally, the Magistrate Judge held that the burden was on the Government to prove by clear and convincing evidence that Petitioner would pose a danger to the community and/or significant flight risk. *Id.* at 25–26.

The Government objected to the Magistrate Judge's Order, which the District Court overruled except for the Government's objection to the burden of proof for the bond hearing. 2023 District Court Order at 2. On February 23, 2023, the District Court accepted the findings and recommendation of the Magistrate Judge, granted the Petition, entered judgment, and ordered that, "within sixty (60) days of the date of this order, Respondents shall provide Petitioner with an individualized bond hearing before an IJ with the required procedural protections, or release Petitioner if they fail to hold the bond hearing." *Id.*

c) *Petitioner's Bond Hearing and Appeal Proceedings*

On April 5, 2023, pursuant to the 2023 District Court Order, the Adelanto Immigration Court held a custody redetermination hearing. (IJ Bond Order at 3). The IJ reviewed documents submitted by Petitioner in support of his request for bond, including letters of support, facility history reports, a rehabilitation program letter, various skills training certificates, criminal history documents, medical history documents, and hardship documents, as well as the Government's conviction documents and prior custody determination documents. (*Id.*). The IJ found that the Government had not met its burden to establish that Petitioner "would pose a danger to the community and/or such a significant flight risk that it could not be adequately mitigated by the setting of an appropriate bond and the implementation of alternatives to detention," and ordered Petitioner to be released from custody upon payment of a $25,000.00 bond and conditions of supervised release. (*Id.* at 3–4).

On July 14, 2023, DHS appealed the bond decision. (Joyce Decl. ¶ 23). On September 16, 2025, the BIA vacated the IJ Bond Order and dismissed DHS's appeal as moot. (BIA Order Vacating Bond at 4). In vacating the IJ Bond Order, the BIA reasoned:

> The administrative records of this Agency reflect that, on January 24, 2025, the Board issued the final administrative decision in this matter. *See* 8 C.F.R. § 1003.39. This Board's authority to set bond conditions on appeal from an Immigration Judge's order derives from the Immigration Judge's underlying authority to redetermine conditions of custody. At this time, neither an Immigration Judge, nor this Board, has regulatory authority to set bond conditions because a final administrative order has been entered in the respondent's removal case.

(BIA Order Vacating Bond at 4).

d) *Petitioner's Liberty Interest*

Having set forth the statutory framework governing the government's authority to detain Petitioner, as well as the procedural history underlying his due process claim, the

-17-

Court now addresses the narrow issue presented before it: whether Petitioner has a liberty interest in his release pending his Ninth Circuit Appeal, given that the IJ Bond Order authorizing his release was vacated by the BIA's September 16, 2025, order. On one hand, 8 U.S.C § 1226(c) mandates Petitioner's detention. *See Preap*, 586 U.S at 409, 419. On the other hand, the 2023 District Court Order granted Petitioner's first habeas corpus petition, found that his prolonged detention pursuant to 8 U.S.C § 1226(c) without a bond hearing and lack of opportunity for a bond hearing was a due process violation, and ordered that Petitioner be given "an individualized bond hearing before an IJ with the required procedural protections, or release Petitioner if they fail to hold the bond hearing." 2023 District Court Order at 2. Petitioner was released from his mandatory detention under § 1226(c) after that hearing was held. (IJ Bond Order).

Based on the 2023 District Court Order, which has not been vacated or appealed, as well as the due process principles articulated in *Morrissey*, this Court finds that Petitioner has a valid liberty interest in remaining on bond, notwithstanding the vacatur of the IJ Bond Order. The IJ, upon direction by the District Court, found that Petitioner was not a flight risk and not a threat to public safety, released Petitioner from civil immigration detention, and placed Petitioner on supervised release. (IJ Bond Order at 3). Like an individual released on parole, Petitioner "relied on at least an implicit promise that [bond] will be revoked only if he fails to live up to the [release] conditions." *Morrissey*, 408 U.S. at 482; *see Sun*, 2025 WL 2730235, at *5.

Since being released on bond, Petitioner asserts he has complied with all the conditions of his release, including reporting to ICE, being on electronic monitoring, completing random drug testing, and refraining from having any negative contacts with law enforcement, (Hogarth Decl. ¶¶ 35, 36), and the government has not provided any evidence to the contrary. In addition, Petitioner has completed a residential rehabilitation program, abstained from alcohol and illicit drugs since being released, and regularly attends Alcoholics Anonymous meetings, (Hogarth Decl. ¶ 35). Given Petitioner's compliance with the conditions of the now vacated IJ Bond Order, he has "developed an

intense reliance on his freedom from imprisonment—from government custody, detention, or other forms of physical restraint." (Mot. at 20–21); *Perera*, 598 F. Supp. 3d at 744 (quoting *Zadvydas*, 553 U.S. at 690) (finding that a noncitizen subject to mandatory detention under § 1226(c) but released on bond had a liberty interest in his freedom); *Sun*, 2025 WL 2730235, at *6 (same). Though at this juncture, the Court does not address whether the IJ Bond Order was validly vacated, the fact remains that Petitioner maintains an interest in his freedom from civil immigration detention, which under procedural due process principles, is not revoked "unless there is first an appropriate determination that the individual has in fact breached the conditions of [release]." *Morrissey*, 408 U.S. at 483–84. In short, Petitioner has a private interest in his freedom from civil immigration detention based on his reliance on the conditions of his release on bond.[7]

## 2. Risk of Erroneous Deprivation

Petitioner has established a risk of erroneous deprivation of his liberty interest absent a pre-detention hearing. As described previously, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). That Respondents are required to detain Petitioner under § 1226(c), "regardless of exactly when or even whether the alien was released from criminal custody," creates a high risk of erroneous deprivation. *Preap*, 586 U.S. at 418. 8 U.S.C. § 1226(c) does not statutorily require an individualized bond hearing—rather, "§ 1226(c) makes clear that detention of aliens within its scope *must* continue pending a decision on whether the alien is to be removed from the United States." *Jennings*, 583 U.S. at 303 (emphasis in original). Yet as described above, Petitioner maintains a liberty interest based on the "implied promise" that, so long as he complies

---

[7] During the preliminary injunction hearing, both parties appeared to agree that the conditions of release set forth in the IJ Bond Order are no longer in effect, given that the IJ Bond Order has been vacated. Government counsel argued that Respondents have the inherent authority to set new conditions of release, which could result in Petitioner's detention, if violated. Petitioner argued that the speculative and possible arbitrary nature of such conditions, which at the time of the preliminary injunction hearing remain uncommunicated to Petitioner, further demonstrates the need for injunctive relief under the circumstances.

with the conditions of his now-vacated release, he will not be subject to civil immigration detention during the pendency of his Ninth Circuit Appeal. *See Morrissey*, 408 U.S. at 482.

The risk of erroneous deprivation is particularly high for Petitioner because the order setting forth the conditions of his release is currently a legal nullity, *see* (BIA Order Vacating Bond), and Petitioner is not currently in civil immigration detention. Although in support of their Opposition, Respondents have submitted the declaration of Deportation Officer John Park, which represents that the Los Angeles Field Office of the ERO "does not intend to re-arrest [Petitioner] before his current Ninth Circuit petition is resolved, or its associated stay of removal ends unless [Petitioner] violates the terms of supervised release," *see* (Park Decl. ¶ 16), the declaration does not demonstrate Officer Park has the authority to speak for any of the Respondents or even the ERO. *See* (Opp. at 2–3) (citing Park Decl. ¶ 16).

Further, because the IJ Bond Order has been vacated, Petitioner lacks notice from Respondents regarding the nature of his current conditions of release, if any. *See* (*id.* at 3). Nor is his release unconditional. Respondents do not dispute that 8 U.S.C. § 1226(c) applies to Petitioner and, again at the preliminary injunction hearing, Respondents represented that ICE and DHS maintain inherent authority to set and alter the terms of Petitioner's release and that Petitioner may be detained should he, for example, commit a crime. Based on the facts before this Court, neither Petitioner nor Respondents know the governing conditions of Petitioner's release and how he may comply. Under these circumstances, neither the Court nor any other reviewing body is able to make an appropriate determination whether Petitioner has, in fact, breached the conditions of his release. *Morrissey*, 408 U.S. at 483–84. As such, the "implicit promise" that his release "will be revoked only if he fails to live up to the [] conditions" of release cannot be brought to bear and therefore risks an erroneous or arbitrary revocation of his protected liberty interest. *Morrissey*, 408 U.S. at 482–84.

### 3. The Government's Interest

Finally, the Court finds that Respondents' interest in re-detaining Petitioner without a pre-detention hearing is low. Petitioner represents that, before the vacatur of his release on bond, he complied with all terms of his release and did not have negative interactions with law enforcement. (Hogarth Decl. ¶¶ 35, 36). Since the IJ Bond Order governing his conditional release was vacated, Petitioner has continued to check in with ICE and represents that he has maintained a lawful presence. (*Id.*). In its briefing and during the preliminary injunction hearing, Respondents did not articulate an interest that supports arresting Petitioner absent a pre-detention hearing. *See* (Opp.). Further, Respondents have not articulated any facts concerning the fiscal or administrative burden that would be incurred by holding a pre-deprivation hearing before a neutral arbiter. Having no facts before the Court that support a finding of changed circumstances since the TRO Order, the Court finds that the government's interest in re-detaining Petitioner without a hearing is low. *See Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) ("[T]he Court concludes that the government's interest in re-detaining Petitioners without a hearing is low, particularly in light of the fact that Petitioners have maintained lawful presence.").

In sum, Petitioner is likely to succeed on the merits of his procedural due process claim. He has a valid liberty interest in his freedom from civil detention, the risk of erroneous deprivation of this freedom is high based both on 8 U.S.C. § 1226(c)'s mandatory detention requirement and the vacatur of the IJ Bond Order, and the government's interest in detaining him is low. Based on the record before the Court, the *Mathews v. Eldridge* factors weigh in Petitioner's favor.

### B. Likelihood of Irreparable Harm Absent Preliminary Relief

A party seeking preliminary injunctive relief "must *demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). "The deprivation of constitutional rights unquestionably constitutes irreparable injury," including those "imposed on anyone subject to immigration

1    detention." *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (citing *Melendres*

2    *v. Arpaio*, 694 F.3d 990, 1002 (9th Cir. 2012)). "Establishing a threat of irreparable harm

3    in the indefinite future is not enough." *Immigrant Defs. L. Ctr. v. Noem*, 781 F. Supp. 3d

4    1011, 1051 (C.D. Cal. 2025) (quoting *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 F. App'x

5    676, 679 (9th Cir. 2011)).

6          Respondents argue that a preliminary injunction should not issue because

7    Petitioner's alleged irreparable harm—civil immigration re-detention without a pre-

8    deprivation hearing—is not imminent for two reasons. (Opp. at 2–3). First, the Ninth

9    Circuit issued an order staying Petitioner's removal until issuance of a mandate. *See* Order

10   Granting Stay. Second, the declaration of Officer Park represents that ICE does not intend

11   to re-detain Petition before his appeal is resolved. (*Id.* at 2–3) (citing Park Decl. ¶ 16).

12         Petitioner does not dispute that the Ninth Circuit has stayed Petitioner's removal for

13   the pendency of his appeal. During the preliminary injunction hearing, Petitioner argued

14   that detention was imminent and that it was unclear how he could comply with the terms

15   of his supervised release because the BIA vacated the IJ Bond Order. Petitioner further

16   argued, and Respondents do not dispute, that ICE has the authority to unilaterally change

17   the conditions of Petitioner's release. To the extent that ICE exercises such authority,

18   according to Petitioner, he could unknowingly violate the conditions of release and be

19   detained without a pre-deprivation hearing. Petitioner also argues that the Park Declaration

20   is insufficient to negate the likelihood of irreparable harm. The Court agrees.

21         Specifically, the Court finds that Petitioner has demonstrated a likelihood of

22   irreparable harm absent preliminary relief for several reasons. First, as described

23   previously, Petitioner is subject to mandatory detention 8 U.S.C. § 1226(c). The harm to

24   his family, should Petitioner be detained, is substantial. Petitioner financially supports his

25   family and provides emotional support for various members of his family, and his

26   absence—particularly if he is detained during the pendency of his Ninth Circuit appeal—

27   would cause them great harm. (Hogarth Decl. ¶¶ 7–30).

28

1    Second, and relatedly, the stay of removal does not lessen the imminence of

2    Petitioner's detention. "The Government's authority to detain a noncitizen under [8 U.S.C.

3    § 1226(c)] [] applies during the administrative and judicial phases of removal proceedings."

4    *Avilez*, 69 F.4th at 535. Thus, despite the Ninth Circuit's order that the "[t]he stay of

5    removal remains in place until the mandate issues," *see* (Order Granting Stay),

6    Respondents retain statutory authority to detain Petitioner under § 1226(c) until that

7    removal. The order does not make reference to Petitioner's detention pending removal;

8    only that Petitioner may not be *deported* until the Ninth Circuit issues the mandate on his

9    appeal. Thus, Respondents' argument that the stay affects the imminency of Petitioner's

10    detention cannot be inferred from the text of the Ninth Circuit's order.

11    Third, Respondents' representation that "ICE does not intend to arrest Petitioner

12    until or unless his appeal and its stay are resolved (or if he should in the future violate his

13    supervised release[] conditions" does not mitigate the likelihood of irreparable and

14    immediate harm. (Opp. at 3). During the preliminary injunction hearing, Respondents

15    stated that John Park is a Deportation Officer with DHS and is familiar with the general

16    operations of ERO, the ICE branch that conducts removal proceedings. However, the Park

17    Declaration does not indicate that Officer Park has the authority or ability to serve as the

18    representative for the named Respondents or agencies. Nor does the Park Declaration

19    indicate that Officer Park has the authority to direct the decisions of ERO, the ICE Los

20    Angeles Field Office, or any fellow deportation officer. *See* (Park Decl.). On its face, the

21    Declaration only purports that Officer Park himself, acting in his role as a Deportation

22    Officer with ERO, does not intend to re-arrest Petitioner pending Petitioner's Ninth Circuit

23    Appeal. *See* (*id.*). As such, the Park Declaration does not render Petitioner's detention

24    under 8 U.S.C. § 1226(c) less imminent.

25    Further, based on the record before the Court, the four cases Respondents cite in

26    support of their arguments opposing issuance of a preliminary injunction are inapposite

27    and do not compel denial of the requested injunction. In *J.P. v. Santacruz Jr* et al., the

28    court held that it lacked subject matter jurisdiction over a noncitizen petitioner released on

bond because he was not "in custody" pursuant to 28 U.S.C. § 2241(c). No. 8:25-cv-01640-FWS-JC, 2025 WL 2633198, at *2 (C.D. Cal. Aug. 27, 2025). Petitioner argued that he was in custody because once a month, he is required to check in virtually "by signing onto a phone application for a few minutes which would track [his] location." *Id.* at *3. The court found that "based on the record," "Petitioner's alleged restrictions are insufficient to demonstrate that he is in custody, the functional equivalent of custody, and/or constructive custody." *Id.* at 2. Though now vacated, Petitioner's supervised release conditions were more restrictive than those described in *J.P.*, and included multiple check-ins with ICE every month, gainful employment, and random drug testing. (IJ Bond Order at 4).[8] Petitioner now also wears an electronic monitor. (Mot. at 10); (Hogarth Decl. ¶ 35). These restrictions are sufficient to demonstrate that he is in custody and make the holding in *J.P.* inapposite. *See J.P.*, 2025 WL 2633198, at *3 (comparing the petitioner's factual circumstances to *Orellana Juarez v. Moniz*, 2025 WL 1698600, at *4 (D. Mass. June 11, 2025), which found that that "petitioner adequately alleged custody where petitioner was required to wear a 24/7 GPS device on his ankle which allows ICE to monitor him constantly and to enroll in an intensive supervision program which includes the requirements of regular reporting, allowing ICE to enter his residence at home visits, a curfew of 10 PM, and geographic restrictions which prohibit him from traveling outside of Massachusetts, New Hampshire, Rhode Island, and Connecticut.").

Respondents also argue that a preliminary injunction should not issue based on the court's holding in *Dam v. Robbins*. (Opp. at 4–5) (citing No. 2:25-cv-08133-JWH-MAA, ECF No. 6 (C.D. Cal. Sept. 16, 2025)). There, the court denied Petitioner's request to

---

[8] "Custody" is not limited to circumstances where petitioners are in actually and physically detained. *Munoz v. Smith*, 17 F.4th 1237, 1240–41 (9th Cir. 2021). "Custody" also "encompass[es] circumstances in which the state has imposed significant restraints on a petitioner's liberty." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 2389 (1963)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("Habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases.").

enjoin the government "from re-arresting and re-detaining [him] without a showing that he
is a flight risk or danger to the public" because the government represented that "ICE does
not intend to detain the Petitioner." *Dam*, No. 2:25-cv-08133-JWH-MAA, ECF No. 6,
at *5, *7. In support of this representation, the government submitted a declaration by
Nelly McKenna, who serves "as Supervisory Detention and Deportation Officer for U.S.
Department of Homeland Security, United States Immigration and Customs Enforcement,
("ICE") Enforcement and Removal Operations ("ERO")." *Id.* (citing *Dam v. Robbins*, No.
2:25-cv-08133-JWH-MAA, ECF No. 6-1 ("McKenna Decl."), at *1). The declaration
provides that "[i]ncluded in [McKenna's] official duties as an SDDO in Los Angeles,
California is supervising the Deportation Officers responsible for managing, monitoring,
scheduling and execution of removal orders for aliens in ICE custody." McKenna Decl. at
*1. The court found that, based on this declaration, the petitioner's claim was not ripe for
adjudication because the harm alleged was speculative. *Dam*, No. 2:25-cv-08133-JWH-
MAA, ECF No. 6, at *7. Here, unlike the declaration in *Dam*, the Park Declaration does
not provide similar assurances of supervisory authority.

The remaining two cases, *Zaiko v. Janecka*, 2:25-cv-08646-MWC-AGR (C.D. Cal.
Sept. 25, 2025) and *Sanchez v. Bondi,* et al., 5:25-cv-02530-AB-DTB (C.D. Cal. Oct. 3,
2025), are similarly inapplicable because the Petitioners sought asylum and did not have
criminal convictions. Thus, they were not subject to mandatory detention under 8 U.S.C.
§ 1226(c). *See* (Opp. at 5). Accordingly, Respondents' cited cases do not speak to the
precise issue at hand: the process due to Petitioner who is subject to 8 U.S.C. § 1226(c),
was released on bond, has purportedly complied with the conditions of release, but whose
order granting release and setting the supervised release conditions has been vacated.

Based on the particular facts presented before the Court, Respondents' arguments
do not tamper the threat of irreparable harm. Petitioner has therefore demonstrated a
likelihood of suffering irreparable harm if a court order enjoining Respondents from
detaining him without a pre-deprivation hearing is not issued.

### C.     Balance of the Equities and Public Interest

The balance of equities and public interest merge when the Government is the party opposing the relief sought.  *Nken*, 556 U.S. at 435.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Baird*, 81 F.4th at 1042.

Given the facts of this case, the potential harm to Petitioner is significant: Petitioner has a liberty interest in his conditional release, yet the order establishing the conditions of release has been vacated.  *See* (BIA Order Vacating IJ Bond Order ).  Based on well-established due process principles governing individuals, the public interest in preventing the erroneous deprivation of Petitioner's liberty interest weighs in favor of Petitioner.  *E.g.* *Morrissey*, 408 U.S. at 484; *Singh*, 2025 WL 1913368, at *7.

*Morrissey*, again, provides guidance as to the public interest in preventing the violation of a released individual's due process rights:

> Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions.  And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.

> Given these factors, most States have recognized that there is no interest on the part of the State in revoking parole without any procedural guarantees at all.  What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.

*Morrissey*, 408 U.S. at 484 (citations omitted).

Respondents assert that the government's resources are limited, and the burdens of litigating this case are substantial. (Opp. at 3). Government counsel also argued during the preliminary injunction hearing that the procedural burden of complying with an injunctive order would be great. However, the burden of holding a pre-detention hearing is outweighed by Petitioner's and the public's interest in providing the level of process due. *See Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *4 (N.D. Cal. Aug. 1, 2025) ("The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight.").

Accordingly, on balance, the *Winter* factors weigh in Petitioner's favor. Petitioner has shown that he is likely to succeed on the merits of his Fifth Amendment claim, wherein given his liberty interest, his detention absent a pre-deprivation hearing before a neutral arbiter would violate the Due Process Clause. Petitioner has also demonstrated that he and his family will suffer significant hardship absent injunctive relief. Alternatively, Petitioner has shown that there are serious questions going to the merits, that the balance of hardships tips sharply in his favor, and that the remaining *Winter* factors are satisfied.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Preliminary Injunction. Until issuance of a mandate in Petitioner's Ninth Circuit Appeal, Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from detaining Petitioner without first holding a detention hearing before a neutral decisionmaker to determine whether his re-detention is lawful.

**IT IS SO ORDERED.**

DATED:    October 23, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE